GEORGE A. WILSON, Respondent, *v.* CORNELIA M. SCOTT, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, NOVEMBER, 1870.)

To a complaint, that one S. had obtained the plaintiff's individual notes by fraud, and sold and transferred them, before maturity, to a *bona fid*« holder, and received therefor moneys which he (S.) deposited in bank, without consideration, to the credit of the defendant, his wife, who drew against, and had received the same, and demanding judgment for the moneys, &c., the defendant demurred, as not stating a cause of action.—*Held*, that as upon the facts stated, the plaintiff never had title to the moneys claimed, and there was no tortious conversion of the notes or moneys by the defendant, an action in the nature of *assumpsit*, for money had and received would not lie.

But per TALCOTT, J., the action was maintainable as an action in equity; and although the defendant, a married woman, was sued without her husband, under the statute of 1862 (§ 7, ch. 172).

But the complaint set out and claimed, that the deposit made by S. was upon a fraudulent trust to the defendant, for himself, and the demurrer was also upon the ground of a defect in parties defendant.—*Held*, that S. was a necessary party, and the demurrer on this ground was sustained.

APPEAL from an order, made at the Jefferson Special Term overruling a demurrer to the complaint.

The complaint set forth substantially the following facts, viz.:

That one J. Goodrich Scott, the husband of the defendant, on the 25th day of May, 1869, unlawfully and fraudulently obtained of the plaintiff six negotiable promissory notes made by the latter, of $1,000 each, payable respectively, at a future day, to William B. Nickelson or bearer, but that said Scott did not acquire any legal title to the notes. That afterward Scott, for value, and before maturity, transferred three of these notes to Norris Winslow, who thereby became a *bona fide* holder thereof, and that the plaintiff was legally holden to pay the same; that Scott placed the avails of the notes so transferred to Winslow, to wit, $2,800, upon the books of the latter's banking house to the credit of the defendant; that the defendant subsequently drew the avails from the banking house upon her checks; that no consideration for the money so received by the defendant passed between her and Scott, her husband; that the money was so placed to her credit for the purpose of securing it from the creditors of Scott, and particularly from the plaintiff.

That the defendant had a separate estate, and was worth the sum of $30,000. That she permitted her husband, under a general power of attorney, to do business ostensibly in her name, but really for his own benefit and profit. That this was done to enable him to secure whatever property he might acquire, from the reach of his creditors. That Scott was insolvent, and had no property that could be reached by execution.

That on the 13th of August, 1869, after the money had been received by the defendant, the plaintiff, after informing her of the unlawful manner in which the promissory notes were obtained from him, demanded the notes from her; that he further demanded of her that, if the notes had been transferred to a purchaser in good faith, to pay to him the proceeds thereof. That she refused these demands.

The plaintiff demanded judgment against the defendant for the sum of money secured by the defendant as the avails

Wilson *v.* Scott.

of the notes; to wit, $2,800 and interest thereon, and such other or different relief as the court must deem proper to grant.

The defendant demurred upon grounds stated as follows, viz. : -

"1st. That the complaint does not state facts sufficient to constitute a cause of action.

2d. The facts stated in the complaint do not show any legal liability in an action at law against the defendant for the conversion of the notes, or refusal to pay over the avails thereof on demand.

3d. There is a defect of parties defendant in this, that the action does not concern her separate property, and hence her husband, J. G. Scott, must be joined with her as a defendant in the action."

The demurrer was duly brought on for argument, and after hearing thereon, was overruled with leave, &c., and an order entered to that effect, from which the defendant appealed.

*Hammond & Winslow*, for the plaintiff.

*Hubbard & Wright*, for the defendant.

Present — JOHNSON and TALCOTT, JJ.

By the Court—TALCOTT, J.  I do not think the complaint in this action can be sustained against this defendant, as setting forth a cause of action in the nature of *indebitatus assumpsit.* The counsel for the plaintiff claims that it may be maintained as an action for money had and received.

The difficulty in that view of the case is, that the plaintiff never had any title to the money which, it is alleged, was deposited with the Merchants' Bank to the credit of the defendant, and has been drawn out by her.  The cases relied upon by the plaintiff's counsel, when critically examined, do not sustain his position.

Lord MANSFIELD's decision in the leading case of *Clark* v. *Shee & Johnson* (1 Cowper, 197), on which most of the subsequent decisions have been based, was an action by the plaintiff against the defendants for money and notes which belonged to the plaintiff, and which a clerk had fraudulently paid to the defendants as premiums for the illegal insurance of lottery tickets. In the course of his judgment, Lord MANSFIELD says: "Where the money or notes are paid *bona fide* upon a valuable consideration, they shall never be brought back by the true owner; but where they came *male fide* into a person's hands, they are in the nature of specific property, and, *if their identity can be traced and ascertained*, the party has a right to recover. * * * Here the party sues for *his identified property*, which has come to the hands of the defendants iniquitously and illegally, in breach of the acts of parliament, therefore they have no right to retain it." The head note of the case, as reported in Cowper, is: "Case for money had and received will lie by the *true owner* of money or notes against a third party into whose hands they have come *male fide, provided their identity can be traced and ascertained.*" The counsel for the defendants, in attempting to quote this head note in his points, omits the proviso, which, as I have shown, was made by Lord MANSFIELD an essential ground of his judgment.

In *Calland* v. *Loyd* (6 M. & W., 26), the money for which the bankers were sued was always the money of the plaintiff, and had been illegally, and in fraud of the plaintiff's rights, deposited with the defendants.

*Abbott* v. *Barry* (2 Brod. & Bing., 369) was a case where goods, by a conspiracy between the defendant and a third party, were fraudulently purchased of the plaintiff in the name of the third party, and finally came into the possession of the defendant; and it was held, that the plaintiff might waive the tort and bring assumpsit as upon a sale of the goods to the defendant; and the decision was placed upon the authority of *Hill* v. *Perrott* (3 Taunton), decided on similar facts, and upon the ground that the defendant could not set up the

sale to another, procured by his own fraud, and that, the defendant being in possession, the law would imply a contract to pay for the goods.

The case of *Marsh* v. *Keating* (1 Bing., N. C., 198) was a case growing out of the celebrated Fauntleroy forgeries. It arose in bankruptcy, and was sent by the lord chancellor to the common-law courts for trial, and finally determined in the house of lords. Fauntleroy, a partner of Marsh and others, had forged a power of attorney purporting to have been executed by Mrs. Keating, and caused to be transferred, under the forged power, £9,000 of the three per cent annuities standing in Mrs. Keating's name, sold the same, and caused the proceeds to be deposited with the bankers of Marsh & Co. to the credit of the firm, and the money was drawn by checks signed in the name of the firm by Fauntleroy. The partners of Fauntleroy had no actual knowledge of the facts, but the business was done in the firm name by him, and the power of attorney forged by him was to the firm or any member of it. It was held, that the claim of Mrs. Keating might be proved against the estate of the firm in bankruptcy, as money had and received, because the firm was, civilly, liable for the acts of Fauntleroy in its name. As to this point of the case, it rests on the principle of waiving the tort and bringing assumpsit.

The case of *Down* v. *Halling* (4 B. & C., 330) stands on the same ground. The plaintiff lost a check, which came to the hands of the defendant under such circumstances that he was not protected as a *bona fide* holder, and he converted it to his own use.

The case of *Mason* v. *White* (17 Mass., 560) is precisely like the case of *Clark* v. *Shee*, in 1 Cowper, except that the party who paid over the money was a mere carrier employed to convey the money, instead of a clerk, and it was paid over for money lost at faro, instead of on an illegal insurance of lottery tickets.

The case of *Pierce* v. *Crafts* (12 J. R., 90) was a question whether a negotiable note, in the hands of the bearer, was

evidence under the money counts; and the court held it was, chiefly on the ground of the statute rendering the note negotiable.

The case of *Hudson* v. *Robinson* (4 M. & Sel., 478), in which Lord ELLENBOROUGH used the so-often quoted language, "an action for money, had and received, is maintainable whenever the money of one man has, without consideration, got into the pocket of another," arose on a plea in abatement of the non-joinder of the copartners of the defendant. The defendant had, in fact, received the plaintiff's money under such circumstances as that, in the particular case, the receipt of the money might be treated as an individual transaction of the defendant, and not on the partnership account.

The principle deducible from these and other cases on the subject seems to be, that where the defendant has in his hands the actual money of the plaintiff, which he is not entitled to hold against the plaintiff, an action for money had and received is maintainable; and further, where the defendant has wrongfully converted the specific property of the plaintiff, so that the plaintiff could maintain an action of tort, then he may waive the tort and recover on the implied assumpsit. Language to be found in the books similar to that quoted by the plaintiff from Cowen's Treatise, that "an action may be maintained in all cases where one has received money belonging to another, which in equity and upon principles of natural justice he should pay over to him," is not to be understood as asserting that in any case where one is equitably liable to another, an action for money had and received may be maintained. Otherwise, questions arising out of the most complicated trusts and frauds, actual or constructive, would be liable at law in an action for money had and received.

In the language of the passage quoted from Cowen, the defendant must have received "money belonging to another," except in those cases where the plaintiff as against the tort feasor may waive the tort and adopt the act of the tort

feasor.    In this case the defendant has not converted or received any specific money or property which ever belonged to the plaintiff, nor is she a tort feasor in the legal sense. The action could undoubtedly have been maintained against the defendant's husband, who converted the notes, by waiving the tort; but cannot be maintained as an action for money had and received against the defendant, who never had any possession of the plaintiff's notes and never converted the same.    I do not mean that the plaintiff must have held as his property the specific bank bills or coins; for whether in the identical bills or coins, or exchanged for others, money is, for legal purposes, regarded as identical; but the plaintiff must have owned so much money *as money*.

The defendant, however, is liable in equity upon the principle that where property is obtained by fraud, equity will fasten a trust upon the property itself at the election of the plaintiff, and follow it or its proceeds, not only in the hands of the wrong-doer, but into the hands of his grantee or assignee, not being a purchaser in good faith for a valuable consideration.    And if there were nothing in the case except the charge that the defendant was the absolute and uncondi tional donee of the proceeds of the unlawful conversion of the notes, I think the action might be maintained against her alone; since the statute of 1862 (§ 7) in effect provides that a married woman may be sued as a *feme sole* in relation to any property which may come to her by gift or grant of any person.    But in this case the plaintiff goes farther, and claims that the defendant in fact holds these proceeds upon a secret and fraudulent trust for the benefit of her husband.    This is, in substance, an allegation that the husband is the party beneficially interested; and this being so, he had a right to be heard, and is manifestly a necessary party before a decree can be made taking the property so alleged to be held in trust out of the hands of the alleged trustee, and appropriating it to the plaintiff upon an alleged claim against the *cestui que trust*.    The ground assigned for demurrer, that J. G. Scott ought to have been made a party to the suit, is, I think,

therefore, well taken, and the order overruling the demurrer should be reversed with costs.

Order appealed from reversed, with costs. Judgment for defendant on demurrer, with leave to plaintiff to amend on payment of costs.